UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY ZAPPA and RANDALL HAHN, )
)
) No. 13 C 6623
Plaintiffs, )
)
v. ) Judge Thomas M. Durkin
)
OAG MOTORCYCLE VENTURES, INC., d/b/a )
CITY LIMITS HARLEY DAVIDSON, JEFFREY J. )
SMITH, GARRISON BENNETT, GARY UMANSKY, )
CARLOS GONZALEZ, individually and in his )
official capacity as a Palatine police officer, )
and THE VILLAGE OF PALATINE, )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs, Mary Zappa and Randall Hahn, filed a four-count complaint against OAG Motorcycle Ventures, Inc., d/b/a City Limits Harley Davidson ("City Limits"), Jeffrey J. Smith, Garrison Bennett, and Gary Umansky (collectively, the "Harley Defendants"), Officer Carlos Gonzalez,[1] and the Village of Palatine (the "Village"). R. 1. Count I, against Officer Gonzalez, is a claim under 42 U.S.C. § 1983 for deprivation of property without due process. *Id.* ¶¶ 52-59. Counts II and III, against the Harley Defendants, allege a violation of the Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA"), 815 ILCS 510/2, and a common law

---

[1] The caption lists Officer Gonzalez as being sued in his official capacity, but the Plaintiffs acknowledge that this is an error and should be disregarded. R. 44 at 1 n.1.

"defamation per se" claim. *Id.* ¶¶ 60-74. Count IV is an indemnification claim against the Village pursuant to 745 ILCS 10/9-102. *Id.* ¶¶ 75-76. Officer Gonzalez and the Village have filed a motion to dismiss, R. 13, as have the Harley Defendants.[2] R. 32. For the following reasons, the Court grants Officer Gonzalez and the Village's motion to dismiss as to Counts I and IV, and declines to exercise supplemental jurisdiction over Counts II and III. The Harley Defendant's motion is thus denied as moot.

## BACKGROUND

In early July 2013, Hahn saw an internet advertisement on City Limits' webpage for a used 2004 FLHTC Harley Davidson motorcycle with a $8,175.00 sale price ("Motorcycle One"). R. 1 ¶¶ 11, 51. Hahn emailed City Limits an offer to buy the motorcycle, and he received a call from Umansky, a sales person at City Limits, on July 8, 2013, to discuss a price. *Id.* ¶¶ 8, 13. A week later, Umansky called Hahn and suggested that Hahn and Zappa come to City Limits to check out the motorcycle.

On July 19, 2013, the Plaintiffs took Umansky up on his offer and traveled to City Limits, so they could test drive Motorcycle One. *Id.* ¶ 15. When they arrived at City Limits, the Plaintiffs were greeted by Umansky and Bennett, a City Limits sales manager, and informed the men that they wanted to test drive the motorcycle. *Id.* ¶ 16. Umansky and Bennett then brought out a motorcycle that was "visually indistinguishable" from the motorcycle in the ad (Motorcycle One) but was in

---

[2] The Plaintiffs voluntarily dismissed Gary Umansky from the case on January 23, 2014. R. 23.

2

actuality a different motorcycle of the same make and model ("Motorcycle Two"). *Id.* ¶¶ 17-18. The Plaintiffs proceeded to take Motorcycle Two out for a ride, and when they returned, Bennett asked them if they liked the motorcycle. *Id.* ¶ 19. The Plaintiffs, believing that the motorcycle was the same as the one in the ad, said yes and noted that the motorcycle had fewer miles than they expected. *Id.* ¶ 20. Umansky proceeded to check his computer to verify the mileage and confirmed that the mileage of the motorcycle (Motorcycle Two) was indeed only about 40,000 miles. *Id.* ¶ 21.

The Plaintiffs offered $6,500 (not including taxes and fees) for the motorcycle they had test ridden, which was Motorcycle Two, although they thought it was Motorcycle One. *Id.* ¶ 23. Bennett took the offer to his finance manager, Mike Pennelli, and returned shortly thereafter to say they had a deal. *Id.* ¶¶ 24-25. Zappa made a down payment of $1,626.66 on the motorcycle with her credit card; the total cost was $7,626.66 after taxes and fees. *Id.* ¶ 26. Pennelli gave Zappa the credit card receipt to sign and handed Hahn the bill of sale to sign that listed the agreed-upon price for the motorcycle and a $1,626.66 credit for Zappa's down payment, leaving a $6,000.00 balance that they would pay when they returned at a later time to pick up the motorcycle. *Id.* ¶ 27. At that point, the Plaintiffs failed to notice that the bill of sale had the VIN number and description of Motorcycle One, not Motorcycle Two—the motorcycle they tested. *Id.* ¶ 28. After they completed the required paperwork, Pennelli congratulated the Plaintiffs on their purchase and took a picture of the Plaintiffs with Motorcycle Two. *Id.* ¶¶ 29-30.

3

The Plaintiffs returned to City Limits on July 22, 2013, to pick up the motorcycle. *Id.* ¶ 31. Motorcycle Two had an orange "Sold" sign on it. *Id.* ¶ 32. Hahn gave Tim Ryan, a City Limits manager, cash for the remaining balance, who in turn gave the money to Smith, City Limits' general manager, to count. *Id.* ¶¶ 6, 33. Ryan then filled out the dealer plate registration for the motorcycle and gave the license plate to Umansky, who installed the plate on Motorcycle Two. *Id.* ¶ 34. Dealer personnel at City Limits proceeded to finish the accounting for the purchase of the motorcycle, and when they were done, the Plaintiffs received the keys to Motorcycle Two. *Id.* ¶¶ 35-36. The Plaintiffs then left City Limits with their newly-purchased Harley Davidson motorcycle. *Id.*

The following day, July 23, 2013, Bennett called the Plaintiffs and informed them that they had received the wrong motorcycle. *Id.* ¶ 37. He told the Plaintiffs that they either had to pay an additional $1,000.00 to keep the motorcycle they had received *or* promptly return the motorcycle to City Limits. *Id.* ¶ 38. The Plaintiffs declined to pay more for the motorcycle. *Id.* ¶ 39. Tony Pisano, City Limits' district manager, then called the Plaintiffs and demanded an additional $2,500.00 for the Plaintiffs to keep the motorcycle. *Id.* ¶¶ 39-40. He further stated that he could report the motorcycle stolen, to which the Plaintiffs said they needed to consult an attorney. *Id.* ¶¶ 41-42. According to the Plaintiffs, Pisano informed the Plaintiffs at that point that he would be immediately reporting the motorcycle as stolen and requesting that Hahn be arrested. *Id.* ¶ 43.

4

The Plaintiffs were out to dinner the next evening on July 24, 2013, when Hahn received a call from a person identifying himself as Officer Gonzalez of the Palatine Police Department. *Id.* ¶ 44. The Plaintiffs allege that Officer Gonzalez informed the Plaintiffs that Smith had reported the motorcycle they possessed as being stolen and that Hahn would be arrested if he did not immediately return the motorcycle. *Id.* ¶¶ 45-46. The Plaintiffs, allegedly fearing arrest even if they returned the motorcycle to City Limits, brought the motorcycle to their local police station in Lake Zurich to surrender the motorcycle. *Id.* ¶ 47. They then informed Smith of where they had brought the motorcycle, and Smith and Officer Gonzalez went to the Lake Zurich police station shortly thereafter to reclaim it. *Id.* ¶¶ 48-49.

The Plaintiffs allege that City Limits has continued to advertise Motorcycle One as being for sale on its website and that City Limits has not returned any of the money they paid. *Id.* ¶¶ 50-51.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## ANALYSIS

Officer Gonzalez and the Village request the Court to dismiss Counts I and IV. The Harley Defendants contend that Counts II and III should be dismissed as well.

### I.   Counts I and IV – Officer Gonzalez & the Village

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013) (citing U.S. Const. amends. V, XIV). Count I of the Plaintiffs' complaint is a claim under 42 U.S.C. § 1983 in which the Plaintiffs allege that Officer Gonzalez, through his threat of arrest, "deprived Plaintiffs of a property interest without due process of law." R. 1 ¶¶ 52-59. To establish a valid claim, the Plaintiffs must allege "(1) that [they] had a cognizable liberty interest under the Fourteenth Amendment; (2) that [they were] deprived of

6

that liberty interest; and (3) that the deprivation was without due process." *Mann*, 708 F.3d at 877. More significantly, the Plaintiffs must allege that Officer Gonzalez had a personal involvement in the deprivation of any property interest, as "[i]t is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 614 (7th Cir. 2002); *see Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

Officer Gonzalez and the Village contend Count I fails to state a claim because the Plaintiffs have not sufficiently alleged Officer Gonzalez's personal involvement in the deprivation of a property interest. R. 14 at 5-7. When addressing the issue of a police officer allegedly assisting a private actor in the repossession of an item, the Court must look to the state actor's conduct during the time at issue. As the Seventh Circuit has explained, "[T]he mere presence of police at the scene of a private act . . . *in which they do not participate* does not transform the private act into a public one." *Soldal v. Cook Cnty.*, 942 F.2d 1073, 1075 (7th Cir. 1992) (citing *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435 (7th Cir. 1986)), *rev'd on other grounds* 506 U.S. 56 (1992)[3] (emphasis in original). Put another way,

---

[3] The Supreme Court stated,
> Respondents request that we affirm on the ground that the Court of Appeals erred in holding that there was sufficient state action to support a § 1983 action. The alleged injury to the Soldals, it is urged, was inflicted by private parties for whom the county is not responsible. . . . . The Court of Appeals found that because the police prevented Soldal from using reasonable force to protect his home from private action that the officers knew was illegal, there was sufficient evidence of conspiracy between the private parties and the officers to foreclose

7

> [O]fficers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the reposessor. The Second Circuit has articulated this continuum as follows: "when an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action." *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999).

*Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004). So, for example, if the state official is involved in a "conspiracy" with a private person or "jointly engaged" in the conduct, such conduct may rise to the level of personal involvement sufficient to trigger § 1983 liability. *See Adickes*, 398 U.S. at 152.

The Plaintiffs direct the Court to the police report Officer Gonzalez authored which shows he "participated" from the time he received a call from Smith saying the Plaintiffs were in possession of a motorcycle they were not supposed to have until the Plaintiffs dropped off the motorcycle at the Lake Zurich Police Department. *See* R. 44-1.[4] Based on that, they argue that Officer Gonzalez was jointly engaged in the Harley Defendants' conduct the entire time. They further argue that by making an "unlawful" and "false" threat, Officer Gonzalez was an

---

> summary judgment for respondents. We are not inclined to review that holding.

*Soldal*, 506 U.S. at 60 n.6 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152-61 (1970)).

[4] The Court may consider the police reports attached to the Plaintiffs' response in its ruling on the motion to dismiss, even if they are not referred to in the complaints. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (stating that a court may "consider public documents and reports of administrative bodies that are proper subjects for judicial notice, though caution is necessary, of course").

8

active participant. R. 44 at 7. The facts as alleged, however, do not support the Plaintiffs' characterization of Officer Gonzalez's conduct. What they do show is that the Plaintiffs were personally in possession of a motorcycle that had a VIN number that was different than the VIN number on the bill of sale they received. R. 1 ¶ 28. They also show that Officer Gonzalez was informed of that fact and that he was informed that Smith, as the general manager of City Limits, wanted possession of an item (Motorcycle Two) that belonged to City Limits, at least on the face of the bill of sale. *See* R. 44-1; R. 44-2. Taking those allegations as true, based on the information presented to him, Officer Gonzalez was entitled to explain to the Plaintiffs what would happen to them if they did not return the motorcycle. It cannot be said that Officer Gonzalez was "actively participating" in the repossession by simply informing the Plaintiffs of the repercussions of what might happen if they maintained possession of the motorcycle.

The allegations also do not support the inference that Officer Gonzalez was "unreasonably and arbitrarily ruling that City Limits deserved possession of the vehicle." *See* R. 44 at 4; *cf. Abbott v. Latshaw*, 164 F.3d 141, 149 (3rd Cir. 1998) (explaining that "it is not for law enforcement officers to decide who is entitled to possession of property"). Officer Gonzalez was simply explaining what would happen if they did not return the motorcycle. He did not say that the Plaintiffs had no legal defense to such an action. The allegations do not demonstrate anything beyond a proper display of authority by Officer Gonzalez—it is unremarkable that Officer Gonzalez would inform a person in possession of apparent stolen property

9

that he could be arrested. Furthermore, the fact Officer Gonzalez travelled to Lake Zurich with Smith when Smith picked up the motorcycle can best be described as "benign attendance . . . in furtherance of [his] official duties." *United States v. Coleman*, 628 F.2d 691, 964 (6th Cir. 1980) (explaining that "mere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into state action"). This is insufficient to establish Officer Gonzalez's personal involvement in the deprivation alleged.

The issue of police officer involvement is generally a question to be addressed at summary judgment. Nevertheless, the Plaintiffs have not adequately alleged that Officer Gonzalez was personally involved in the deprivation of a property interest, so Count I must be dismissed. Additionally, because Count IV is an indemnification claim against the Village in the event a judgment is entered against Officer Gonzalez, *see* 745 ILCS 10/9-102, it is dismissed as well.

## II.   Counts II and III – Harley Defendants

Counts II and III are directed at the Harley Defendants, who set forth a number of reasons in their motion to dismiss as to why the counts against them should be dismissed. However, the Counts against the Harley Defendants are Illinois state law claims that are before the Court only because they are intertwined with the Section 1983 claim in Count I. *See Hadad v. World Fuel Servs., Inc.*, No 13 C 3802, 2013 WL 6498894, at *3 (N.D. Ill. Dec. 11, 2013) ("28 U.S.C. § 1367 allows a district court to decide any 'claims' related to other claims over which the court has original jurisdiction 'if they are so closely related to the plaintiff's federal law-claims

10

as to be in effect part of the same case.'" (quoting *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007)). Count I has been dismissed. 28 U.S.C. § 1367(c) authorizes a district court to decline to exercise supplemental jurisdiction if "all claims over which it has original jurisdiction" have been dismissed. The Court believes that the exercise of supplemental jurisdiction over the state law claims in Counts II and III would not be appropriate because they are purely state law issues and significant personal and judicial resources have not yet been expended on the matter requiring this Court to address the substance of the Harley Defendants' arguments. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (explaining that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims"). Accordingly, those counts are dismissed.

**CONCLUSION**

Officer Gonzalez and the Village's motion to dismiss is granted, R. 13, and Counts I and IV are dismissed without prejudice. The Plaintiff is given leave to file an amended complaint on or before June 11, 2014, if the deficiency identified in Count I can be cured. If not, the dismissal will become with prejudice. The Harley Defendants' motion to dismiss, R. 32, is denied as moot because the Court declines to exercise supplemental jurisdiction over the claims in Counts II and III. Those counts are thus also dismissed. The status hearing set for June 4, 2014, is vacated.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: May 12, 2014