UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY ZAPPA and RANDALL HAHN, )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>OAG MOTORCYCLE VENTURES, INC., d/b/a )<br>CITY LIMITS HARLEY DAVIDSON, JEFFREY J. )<br>SMITH, GARRISON BENNETT, CARLOS )<br>GONZALEZ, individually and in his official )<br>capacity as a Palatine police officer, )<br>and THE VILLAGE OF PALATINE, )<br>)<br>Defendants. ) | No. 13 C 6623<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Mary Zappa ("Zappa") and Randall Hahn ("Hahn") (collectively, the "Plaintiffs"), filed a three-count amended complaint against OAG Motorcycle Ventures, Inc., d/b/a City Limits Harley Davidson ("City Limits"), Jeffrey J. Smith ("Smith"), and Garrison Bennett ("Bennett") (collectively, the "Harley Defendants"), Officer Carlos Gonzalez ("Officer Gonzalez"), and the Village of Palatine (the "Village"). R. 55. Count I, against Officer Gonzalez, is a claim under 42 U.S.C. § 1983 for deprivation of property without due process. *Id.* ¶¶ 69-82. Count II, against the Harley Defendants, alleges a violation of the Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA"), 815 ILCS 510/2. *Id.* ¶¶ 83-101. Count III is an indemnification claim against the Village pursuant to 745 ILCS 10/9-102. *Id.* ¶¶ 102-03. Officer Gonzalez and the Village filed a motion to dismiss, R. 57, as did

the Harley Defendants. R. 59. For the following reasons, the Court grants with prejudice Officer Gonzalez and the Village's motion to dismiss Counts I and III, and declines to exercise supplemental jurisdiction over the Illinois state law claim in Count II. The case is therefore dismissed, and the Harley Defendants' motion is denied as moot.

## BACKGROUND

The Court has already discussed in detail the factual background behind this case, so another thorough explanation is unnecessary. *See* R. 52 at 2-5. In short, this case involves a dispute regarding the purchase of a motorcycle. In early July 2013, Hahn responded to an internet advertisement for a Black FLTHTC Harley-Davidson motorcycle ("Motorcycle One") at City Limits. R. 55 ¶¶ 10-15. The Plaintiffs later went to City Limits, test drove a motorcycle (a different motorcycle than the one in the advertisement, "Motorcycle Two"), and agreed to purchase the motorcycle from the Harley Defendants. *Id.* ¶¶ 15-31. In essence, the Plaintiffs thought they were purchasing Motorcycle Two—the motorcycle they test drove, examined, and took pictures with—when in actuality, the bill of sale Hahn signed listed the VIN number, year, and mileage for Motorcycle One. *Id.* ¶ 30. The following photo (taken by a City Limits employee, former-defendant Gary Umanski, on his iPhone on July 19, 2013, at approximately 6:50 p.m.) shows the Plaintiffs with Motorcycle Two at the dealership after reaching what they thought was an agreement to purchase *that* motorcycle:



*Id.* ¶ 32.

On July 22, 2013, the Plaintiffs returned to City Limits, provided the dealership with the remaining balance on the motorcycle, and then left the dealership with Motorcycle Two. *Id.* ¶¶ 33-38. On July 23, 2013, Hahn noticed the mix-up with the motorcycles (i.e., the VIN on the bill of sale did not match the VIN of Motorcycle Two) when he attempted to register Motorcycle Two with his insurance company. *Id.* ¶ 39. Hahn then called the dealership to notify it of the mix up. *Id.* ¶ 40. Bennett told Hahn he could keep Motorcycle Two if he paid an extra $1,000. *Id.* ¶ 43. Hahn refused that offer, in addition to City Limits employee Tony Pisona's alleged demand of $2,500 to "redo the paperwork" for Motorcycle Two. *Id.* ¶¶ 43-45. City Limits told Hahn that it would report the motorcycle as stolen if the Plaintiffs did not return it to City Limits. *Id.* ¶¶ 45, 47.

On July 24, 2013, Hahn received a phone call from Officer Gonzalez at approximately 7:16 p.m. *Id.* ¶ 48. Officer Gonzalez said that Hahn had been reported as stealing a motorcycle and that the Plaintiffs must return the motorcycle to City Limits or they would be arrested. *Id.* ¶ 49. Hahn attempted to explain the mix-up to Officer Gonzalez, stating that the allegation "was false, that he had stolen nothing, and that regardless of what the officer had been told, he (Hahn) did not have immediate access to the motorcycle since, at the moment, it was at a storage location owned by another." *Id.* ¶ 50. Hahn alleges that Officer Gonzalez again "threatened" to arrest him if he failed to return the motorcycle within the next five hours. *Id.* ¶ 51. Officer Gonzalez spoke to Hahn on the phone for a second time (approximately fifteen minutes later) and, according to Hahn, "made [a threat to arrest him] without even having probable cause to arrest Plaintiffs for theft of the motorcycle." *Id.* ¶ 60.

"Fearing imminent arrest," Hahn returned Motorcycle Two to the Lake Zurich police station later that night after getting in touch with their friend who was storing the bike. *Id.* ¶ 62. At the station, Officer Mark Frey told the Plaintiffs that "the bike had not been reported stolen and there was not a warrant out for Hahn's arrest." *Id.* ¶ 63. Nevertheless, the Plaintiffs left Motorcycle Two at the police station. *Id.* ¶ 64. Officer Gonzalez and Smith subsequently went to the Lake Zurich police station to retrieve Motorcycle Two. *Id.* ¶ 65. The Plaintiffs allege that City Limits has not returned any of the money they paid for the motorcycle. *Id.* ¶ 68.

On September 16, 2013, the Plaintiffs filed a four-count complaint, alleging a constitutional rights violation under § 1983 against Gonzalez (Count I); a violation and conspiracy to violate the ICFA against City Limits, Umansky, Bennett, and Smith (Count II); defamation per se against City Limits and Smith (Count III); and an indemnification count against the Village (Count IV). R. 1 ¶¶ 52-76. On May 12, 2014, the Court issued an order granting Officer Gonzalez and the Village's motion to dismiss Counts I and IV for failure to state a claim. R. 52 at 10. The dismissal was without prejudice. *Id.* at 11. The Court also declined to exercise supplemental jurisdiction over the state law claims in Counts II and III and, thus, denied as moot the Harley Defendants' motion to dismiss. *Id.* at 10-11.

On June 16, 2014, the Plaintiffs filed an amended complaint re-alleging the § 1983 claim against Officer Gonzalez (Count I); the violation and conspiracy to violate ICFA claim (Count II); and the indemnification claim against the Village (Count III). R. 55. The Plaintiffs' amended complaint does not include the defamation per se claim, which was Count III of their original complaint. *Compare* R. 1 ¶¶ 70-74, *with* R. 55.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## ANALYSIS

### I. Counts I and III – Officer Gonzalez & the Village

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013) (citing U.S. Const. amends. V, XIV). Pursuant to 42 U.S.C. § 1983, the Plaintiffs allege that Officer Gonzalez, through his threat of arrest, "deprived Plaintiffs of a property interest without due process of law." R. 55 ¶ 79. To establish a valid claim, the Plaintiffs must allege "(1) that [they] had a cognizable liberty interest under the Fourteenth Amendment; (2) that [they] were] deprived of that liberty interest; and (3) that the deprivation was without due

6

process." *Mann*, 708 F.3d at 877. Furthermore, "[i]t is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation," *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 614 (7th Cir. 2002), so the Plaintiffs must also allege that Officer Gonzalez had a personal involvement in the deprivation of a property interest. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

In determining whether a state actor had a "personal involvement" in a repossession action, the Court must look to the state actor's conduct during the time period at issue. As the Seventh Circuit has explained (and as the Court previously acknowledged), "[T]he mere presence of police at the scene of a private act . . . *in which they do not participate* does not transform the private act into a public one." *Soldal v. Cook Cnty.*, 942 F.2d 1073, 1075 (7th Cir. 1992) (citing *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435 (7th Cir. 1986)), *rev'd on other grounds* 506 U.S. 56 (1992) (emphasis in original). Put another way,

> officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor. The Second Circuit has articulated this continuum as follows: "when an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action." *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999).

*Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004). So, for § 1983 liability to attach to a state official in a repossession action, the state official must be involved

in a "conspiracy" with a private person or "jointly engaged" in the conduct. *See Adickes*, 398 U.S. at 152.

In its May 12, 2014 order, the Court concluded that the Plaintiffs failed to state a claim under § 1983 because they did not sufficiently allege the required elements. R. 52 at 10. Specifically, the Plaintiffs did not sufficiently allege that Officer Gonzalez "actively participated" in the repossession of Motorcycle Two. R. 52 at 9. Officer Gonzalez and the Village contend that the amended complaint should also be dismissed because the Plaintiffs failed to cure the deficiencies the Court previously identified, in addition to other reasons that the Court is not required to address.[1] R. 62 at 2, 5-13.

The Plaintiffs added certain allegations in their amended complaint in an attempt to cure the "personal involvement" deficiency the Court previously identified.[2] Many of the additional allegations appear to be duplicative and involve legal conclusions, though they can be summarized as follows:

---

[1] Officer Gonzalez and the Village contend that Plaintiffs have failed to adequately state a claim because: (1) they have not alleged well-pleaded facts that Officer Gonzalez had personal involvement in causing the Plaintiffs to be deprived of any Constitutional right (specifically, unreasonable seizure and deprivation of their property); (2) the Plaintiffs have adequate and available state remedies to seek redress for the alleged deprivation of property; and, (3) alternatively, the Plaintiffs have not alleged facts sufficient to negate the applicability of the affirmative defense of qualified immunity. R. 62 at 2, 5-13.

[2] The amended complaint also includes various pictures of the Plaintiffs with Motorcycle Two at the dealership, in addition to excerpts of the Lake Zurich police report and Officer Gonzalez's incident report, a copy of the credit card receipt for the motorcycle transaction, and a picture of the temporary license plate on Motorcycle Two. R. 55 ¶¶ 24, 28, 32, 36, 52, 62, 66. This includes evidentiary detail of what occurred, but none of it goes to the relevant question here of an officer's duty when

8

- Hahn explained to Officer Gonzalez that this was not a "theft." but rather, a civil matter because he negotiated and purchased Motorcycle Two from City Limits. R. 55 ¶¶ 50, 52.

- Hahn told Officer Gonzalez that Motorcycle Two was in storage owned by another individual, and thus, he did not have immediate access to it. *Id.* ¶ 50. In response, Officer Gonzalez told Hahn that he did not care and again stated that he would arrest Hahn if Motorcycle Two was not returned to City Limits that night. *Id.* ¶¶ 51, 59.

- Smith, the "complaining witness," told Officer Gonzalez, that the incident (1) arose from a sales transaction; and (2) that Hahn called the dealership about receiving the "wrong paperwork" with the wrong VIN number. *Id.* ¶ 53-54.

- Hahn told Officer Gonzalez that the dealership put the temporary license plates on Motorcycle Two themselves and gave Hahn the keys to Motorcycle Two. *Id.* ¶ 56.

- Officer Gonzalez made "threats" of arrest for theft without probable cause because Officer Gonzalez had actual knowledge that Plaintiffs paid in full for Motorcycle Two and that the dealership delivered Motorcycle Two to Plaintiffs. *Id.* ¶ 60.

- But for the intervention of Officer Gonzalez into the Plaintiffs' dispute with the Harley Defendants, the repossession of Motorcycle Two would not have occurred. They only turned over the motorcycle because they feared imminent arrest. *Id.* ¶¶ 61, 62, 64.

- Officer Frey told Hahn that Motorcycle Two had not been reported as stolen and that there was no warrant out for Hahn's arrest. *Id.* ¶ 63.

- Officer Gonzalez had no concern as to whether Plaintiffs' money was returned to them. *Id.* ¶ 66.

---

faced with what appears to be a legitimate complaint from a local business. Even taken together, this collection of information does nothing to cure the deficiency in the complaint the Court previously identified.

In sum, the Plaintiffs argue that Officer Gonzalez's "threats" of "imminent" arrest personally caused the repossession of Plaintiffs' motorcycle by essentially "chilling" their ability to object to the repossession, placing them in imminent fear of arrest, and leaving the Plaintiffs with no other choice but to surrender Motorcycle Two to the Lake Zurich police station. R. 68 at 5-8.

The Court does not agree with the Plaintiffs' characterization of Officer Gonzalez's conduct, even with the additional allegations in the amended complaint. As previously discussed, the facts alleged demonstrate that the Plaintiffs were personally in possession of a motorcycle that had a VIN number that was different from the VIN number on the bill of sale they received. R. 52 at 9. Officer Gonzalez was informed of that fact, and Smith, the general manager of City Limits, told Officer Gonzalez he wanted to regain possession of Motorcycle Two because it belonged to City Limits—or at least appeared to because of the differing VIN numbers. *Id.* Based on the bill of sale and the information Smith relayed to him, Officer Gonzalez was entitled to explain, warn, and inform the Plaintiffs of what could happen if they did not return the motorcycle.

The Plaintiffs allege that "[b]ut for the intervention of Officer Gonzalez into the dispute . . . , the repossession of Motorcycle Two *could not* have occurred." R. 55 ¶ 61 (emphasis added). But the facts alleged demonstrate the Plaintiffs went to the Lake Zurich police station to surrender Motorcycle Two on their own volition, albeit after being told the failure to do so would result in their arrest. There is no allegation that Officer Gonzalez ever physically confronted the Plaintiffs or even

made an attempt to do so. There is also no allegation that Officer Gonzalez located the Plaintiffs and escorted them to the Lake Zurich police station, or personally took possession of Motorcycle Two. To the contrary, the facts alleged demonstrate there was significant physical distance between Officer Gonzalez and the Plaintiffs at all times. Thus, even if Officer Gonzalez was repetitive in his "threats" to arrest the Plaintiffs if they did not return the motorcycle, the Plaintiffs could have easily hung up the phone, contacted their local police department to discuss the matter, or directly reached out to the Harley Defendants to try to solve the issue. *See Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 200 (7th Cir. 1985) (holding that "a telephone call to an identified suspect from a detective investigating a charge of vandalism [and requesting the suspect come to the station to answer charges] [does not] constitute[] such a restrain on the suspect's freedom that his coming to the station house is anything other than voluntary action"). Physical distance alone is not outcome determinative. But nothing about Officer Gonzalez's alleged conduct demonstrates that he in any way forced the Plaintiffs to return the motorcycle or acted in a way that elicits some sort of improper impartiality in favor of the Harley Defendants. Without any allegations to support that, it cannot be inferred that Officer Gonzalez was "actively participating" in the repossession of the motorcycle by simply informing the Plaintiffs of the possible consequences of what may happen if they did not return the motorcycle. *Cf. Marcus v. McCollum*, 394 F.3d 813, 823 (10th Cir. 2004) (concluding that there was an inference that police officers did not act in a neutral manner because the officers entered onto private property, did not

11

ask for further documentation of the repossessor's ownership interest in the vehicle, and through physical action and verbal face-to-face threats, dissuaded the plaintiffs from continuing their resistance of the repossession); *Abbott v. Latshaw*, 164 F.3d 141, 149 (3rd Cir. 1998) (explaining that "there came a point during [the repossession] incident where [the lieutenant's] role changed from protector of the peace to enforcer . . . [when the lieutenant] 'grabbed' [the plaintiff's attorney] by the arm and told him he was under arrest").

Furthermore, there is no allegation in this case that Officer Gonzalez acted inappropriately in light of a complaint from a local business that an item might have been stolen. And it is not uncommon for individuals to attempt to explain their conduct when they are presented with a complaint or a criticism of their actions. The fact Officer Gonzalez explained to the Plaintiffs what could occur if they maintained possession of Motorcycle Two does not on its own render him an active participant in the suit. Indeed, arrest may have been imminent at some point that night, even if the bike had not *officially* been reported as stolen at that moment (or when the motorcycle was left at the Lake Zurich police station) or if an arrest warrant had not *yet* been issued. *See* R. 55 ¶ 63. This is also true even if the bike was being stored at Hahn's friend's place—an item that is alleged to be stolen is still an item alleged to be stolen, regardless of where it is stored or who might be in possession of it at that time. *See generally Williamson v. Curran*, 714 F.3d 432, 446-47 (7th Cir. 2013) (dismissing a § 1983 claim for an arrest without probable cause because "[t]he facts known to [the officers], including [the plaintiff's] own

statements that she along with her husband was exerting control over the horse, were sufficient to warrant a reasonable belief that she too was involved in the purported theft"). Additionally, as stated in the Court's original dismissal order, the fact Officer Gonzalez travelled to Lake Zurich with Smith when Smith picked up the motorcycle can best be described as "benign attendance . . . in furtherance of [his] official duties." *United States v. Coleman*, 628 F.2d 661, 964 (6th Cir. 1980) (explaining that "mere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into state action").

In short, even taking the facts alleged in the Plaintiffs amended complaint as true, the additional allegations do not undermine the Court's original conclusion that the facts in this case do not demonstrate that Officer Gonzalez had any personal involvement in the deprivation of a constitutional right. Rather, the additional facts are simply descriptions of how the Plaintiffs felt during the situation and encompass overall characterizations of Officer Gonzalez's conduct and of what Officer Gonzalez told them. The facts relating to Officer Gonzalez's conduct show nothing more than a proper display of authority, and thus, Count I of the Plaintiffs' amended complaint must be dismissed with prejudice.[3] *See Bausch v.*

---

[3] The caption again lists Officer Gonzalez as being sued in his official capacity. *See* R. 55. The Plaintiffs acknowledged in their response brief to the initial motion to dismiss that this allegation was an error in the initial complaint. R. 44 at 1 n.1. The Court is unsure as to whether the same mistake was made in the amended complaint or if the Plaintiffs wanted to amend the complaint to contain an "official capacity" claim. Nevertheless, having reviewed the amended complaint, the Court concludes that it does not provide a factual basis for an official capacity claim either.

*Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (explaining that a district court may deny leave to amend when the amendment would be "futile"). Count III, an indemnification claim against the Village in the event a judgment is entered against Officer Gonzalez on Count I, *see* 745 ILCS 10/9-102, is also dismissed with prejudice.

## II. Count II – Harley Defendants

Counts II is directed at the Harley Defendants, who set forth a number of reasons in their motion to dismiss as to why the count against them should be dismissed. *See* R. 60. However, as discussed in the prior dismissal order, the count against the Harley Defendants is an Illinois state law claim that is before the Court only because it is intertwined with the § 1983 claim in Count I. Count I has been dismissed, and the Court declines to exercise supplemental jurisdiction over the claim for the same reasons it previously declined to do so. *See* R. 52 at 10-11. Count II is therefore dismissed as well.

## CONCLUSION

Officer Gonzalez and the Village's motion to dismiss as to Counts I and III, R. 57, is granted with prejudice. The Harley Defendants' motion to dismiss, R. 59, is denied as moot because the Court declines to exercise supplemental jurisdiction over the claim in Count II. The case is dismissed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 10, 2014

14